1
2
3
4
5
6
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NANCY SARO, an individual,

Plaintiff,

v.

BANK OF AMERICA, NA; and DOES 1-50, inclusive

Defendants.

Case No.:  22cv1798 DMS (DEB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

This case comes before the Court on Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC").  Plaintiff filed an opposition to the motion, and Defendant filed a reply.  For the reasons discussed below, the motion is granted in part and denied in part.

**I.**

**BACKGROUND**

Plaintiff Nancy Saro is the owner of the property located at 17601 Valle Verde Road, Poway, CA 92064 ("the Property").  (FAC ¶ 7.)  The Property is financed by three loans totaling approximately $850,000.00, (*id.* ¶ 8), two of which are home equity lines of credit ("HELOCs") owned by Defendant Bank of America.  (*Id.* ¶ 10.)

In February 2020, at the outset of the COVID-19 pandemic, Plaintiff entered into a forbearance agreement with Defendant on her HELOCs.  (*Id.* ¶ 13.)  Thereafter, Plaintiff

1

requested a deferral on her past loan amounts with Defendant, which Defendant denied. (*Id.* ¶ 15.) Plaintiff then began the process of modifying her loan with Defendant. (*Id.* ¶ 16.) Plaintiff alleges that during this process she submitted information to Defendant, but Defendant claimed it lost Plaintiff's application. Plaintiff also alleges Defendant denied her application. (*Id.* ¶ 18.) Plaintiff alleges this happened twice during the loan modification process. (*Id.* ¶ 19-20.) Plaintiff further alleges that after Defendant denied Plaintiff's second application it began to harass her "over the phone" about one of her HELOCs. (*Id.* ¶ 21.)

Plaintiff then decided to apply for a reverse mortgage to pay off her loans with Defendant. (*Id.* ¶ 22.) Plaintiff alleges she was working with broker Summit Lending, which needed certain information from Defendant to proceed with the reverse mortgage, but Defendant failed to provide that information. (*Id.* ¶ 23.)

Plaintiff alleges that although Defendant knew Plaintiff was attempting to secure a reverse mortgage, it began foreclosure proceedings against the Property. (*Id.* ¶ 30.) Plaintiff alleges she was unable to secure the reverse mortgage due to Defendant's failure to provide the broker with the necessary information. (*Id.* ¶ 36.)

As a result of these events, Plaintiff filed the present case against Defendant alleging claims for interference with prospective economic advantage, elder financial abuse, breach of the covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, and violation of California Business and Professions Code § 17200, et seq. After some initial motions, the parties requested a stay of the case so they could pursue settlement, which the Court granted. After four extensions and no settlement, the stay was lifted and Defendant filed a motion to dismiss. Plaintiff thereafter filed the FAC, and Defendant filed the present motion.

## II.

## DISCUSSION

Defendant moves to dismiss Plaintiff's FAC in its entirety. In response, Plaintiff requests leave to amend her claims for bad faith, intentional misrepresentation, negligent

1  misrepresentation, and her claim under California Business and Professions Code §
2  17200.  Plaintiff's other two claims are discussed below.

3  **A.      Legal Standard**

4  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550
5  U.S. 544 (2007), the Supreme Court established a more stringent standard of review for
6  12(b)(6) motions.  To survive a motion to dismiss under this standard, "a complaint must
7  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
8  on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial
9  plausibility when the plaintiff pleads factual content that allows the court to draw the
10 reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing
11 *Twombly*, 550 U.S. at 556).

12 "Determining whether a complaint states a plausible claim for relief will ... be a
13 context-specific task that requires the reviewing court to draw on its judicial experience
14 and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).
15 In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are
16 not entitled to the assumption of truth."   *Id.* at 680. It then considered "the factual
17 allegations in respondent's complaint to determine if they plausibly suggest an entitlement
18 to relief." *Id.* at 681.

19 **B.      Interference with Prospective Economic Advantage**

20 Here, the first disputed claim is Plaintiff's claim for intentional interference with
21 prospective economic advantage.

22 In order to prove a claim for intentional interference with prospective
   economic advantage, a plaintiff has the burden of proving five elements: (1)
23 an economic relationship between plaintiff and a third party, with the
   probability of future economic benefit to the plaintiff; (2) defendant's
24 knowledge of the relationship; (3) an intentional act by the defendant,
   designed to disrupt the relationship; (4) actual disruption of the relationship;
25 and (5) economic harm to the plaintiff proximately caused by the defendant's
26 wrongful act, including an intentional act by the defendant that is designed to
   disrupt the relationship between the plaintiff and a third party.
27

28

22cv1798 DMS (DEB)

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003)).  In addition, Plaintiff must "plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'"  *Korea Supply*, 29 Cal. 4th at 1153 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).

Here, Defendant argues Plaintiff has failed to allege sufficient facts to support the elements of (1) an intentional act designed to disrupt Plaintiff's relationship with a third party, and (2) injury.  On the first of these elements, Plaintiff alleges Defendant "refused to give Summit Lending access to Plaintiff's records multiple times after Plaintiff supplied Defendant with multiple signed formal waivers." (FAC ¶ 42.)  Defendant responds to this allegation by arguing that it declined to provide Summit Lending access to Plaintiff's information because it was following its own consumer protection policies, which are required by federal law.  This argument explains why Defendant failed to provide Plaintiff's information to Summit Lending, but it does not show that Plaintiff has failed to allege sufficient facts to support this claim.  Accordingly, this argument does not warrant dismissal at this stage of the proceedings.

On the injury element, Defendant argues Plaintiff's alleged injury, namely, her inability to obtain a jumbo reverse mortgage, is speculative, and therefore insufficient to support this claim.  Defendant cites two cases in support of this argument, neither of which is persuasive.  First, *Hart v. Select Portfolio Servicing, Inc.*, No. 2:22-cv-03399-FLA (MRWx), 2023 WL 7107277 (C.D. Cal. Sept. 27, 2023), was an order on summary judgment, not a motion to dismiss.  The facts of *Hart* are also distinguishable from the facts of this case.  In *Hart* the court noted the plaintiff failed to "present any evidence demonstrating he sought or applied for" a refinance or modification of his loan.  *Id.* at *5.  Here, by contrast, Plaintiff alleges she applied for the jumbo reverse mortgage, (FAC ¶¶ 22), and there is evidence to support that allegation.  (*See* FAC, Ex. 2.)  *Minor v. Laggner*, No. CV 18-731 PA (KSx), 2018 WL 10498450 (C.D. Cal. Dec. 10, 2018), is also

1   distinguishable on this basis.  *See id.* at *7 (stating plaintiff's "conclusory and entirely

2   speculative allegations that he would have obtained an alternative to the Salinas Loan had

3   he not relied on Laggner and Outpost" failed to satisfy damages element under heightened

4   pleading requirements of Rule 9(b)).  Defendant's argument also ignores that Plaintiff

5   alleged more than just an inability to obtain a jumbo reverse mortgage.  She also alleges

6   that as a result of Defendant's conduct, she "now stands to imminently lose the Property

7   and all equity therein."  (FAC ¶ 46.)

8       Defendant has not shown that Plaintiff has failed to allege sufficient facts to support

9   her intentional interference claim.  Accordingly, Defendant's motion to dismiss that claim

10  is denied.

11  **C.      Elder Financial Abuse**

12      The only other disputed claim at issue here is Plaintiff's claim for elder financial

13  abuse.  To state a claim for elder abuse, "a plaintiff must demonstrate that a defendant: (1)

14  subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse; and (2)

15  acted with recklessness, malice, oppression, or fraud in the commission of the abuse."

16  *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 879 (N.D. Cal. 2010).

17  "Financial abuse" of an elder occurs when a person or entity:

18  (1) Takes, secretes, appropriates, obtains or retains real or personal property
19      of an elder or dependent adult for a wrongful use or with intent to defraud,
        or both.
20

21  (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or
        personal property of an elder or dependent adult for a wrongful use or with
22      intent to defraud, or both.

23
    (3) Takes, secretes, appropriates, or retains, or assists in taking, secreting,
24      appropriating, obtaining, or retaining, real or personal property of an elder
        or dependent adult by undue influence, as defined in Section 15610.70.
25

26  Cal. Welfare & Institutions Code § 15610.30(a).

27      Here, Plaintiff alleges Defendant "took, secreted, appropriated and/or retained" her

28  real property.  (FAC ¶ 52.)  Specifically, Plaintiff alleges "Defendant put Plaintiff in

1    imminent harm of losing her Property through foreclosure when Defendant refused to

2    review Plaintiff's loan modification application." (*Id.* ¶ 53.)   Plaintiff also alleges

3    Defendant thereafter "denied Plaintiff's loan modification request[,]" (*id.* ¶ 56), and then

4    caused a Notice of Trustee's Sale to be recorded against her property. (*Id.* ¶ 59.)[1]

5    Defendant argues these allegations fail to show that Defendant took any property belonging

6    to Plaintiff.   Defendant also asserts that to the extent the claim is premised on its initiation

7    of foreclosure proceedings, that conduct is privileged and cannot constitute a "taking" of

8    Plaintiff's property.   Defendant also contends Plaintiff has failed to allege any "wrongful"

9    conduct on Defendant's part.

10         To the extent Plaintiff's claim is based on Defendant's refusal to consider her loan

11   modification application or Defendant's denial of Plaintiff's loan modification application,

12   the Court agrees with Defendant that this conduct did not result in a taking of Plaintiff's

13   property.

14         To the extent Plaintiff's claim is based on Defendant's recording of the Notice of

15   Trustee's Sale, there is case law supporting Defendant's argument that the initiation of

16   foreclosure proceedings does not amount to a taking of any property. *See Kouretas v.*

17   *Nationstar Mortgage Holdings, Inc.*, No. 2:13-cv-02632-MCE-KJN, 2014 WL 4109623,

18   at *6 (E.D. Cal. Aug. 19, 2014) (finding initiation of foreclosure proceedings did not show

19   plaintiff "has been deprived or any real or personal property.")   However, at least one court

20   has come to the opposite conclusion. *See Quintero Family Trust v. OneWest Bank, F.S.B.*,

21   No. 09-CV-1561-IEG (WVG), 2010 WL 392312, at *16 (S.D. Cal. Jan. 27, 2010) (finding

22

23

24   [1] In her opposition to the present motion, Plaintiff asserts her claim "is not simply premised
     on the foreclosure action," but is also based on "Defendant's interference with Plaintiff's

25   efforts to save her home from foreclosure." (Opp'n at 8.)  This allegation is not included
     in the FAC, therefore the Court does not consider it in deciding the present motion. Even

26   if the Court were to consider it, it would appear to suffer the same fate as Plaintiff's

27   allegations about Defendant's refusal to consider and subsequent denial of her request for
     a loan modification, as explained below.

28

1    initiation of foreclosure proceedings satisfies "taking" element for elder abuse claim).  This

2    Court is inclined to agree with *Kouretas*, but need not further address the issue as

3    Defendant's privilege argument is more persuasive.  Case law on this point supports

4    Defendant's argument that nonjudicial foreclosure activity is protected by the qualified

5    privilege found in California Civil Code § 47(c).  *See Consumer Solutions REO, LLC v.*

6    *Hillery*, 658 F.Supp.2d 1002, 1018-19 (N.D. Cal. 2009).  To overcome that privilege, the

7    plaintiff must plead malicious conduct.  Here, Plaintiff alleges "Defendant is guilty of

8    malice," and that its actions were "malicious," but she has failed to set forth any facts to

9    support those conclusory allegations.  In the absence thereof, and to the extent Plaintiff's

10    claim is based on "nonjudicial foreclosure activity," the claim is dismissed.

### III.

### CONCLUSION AND ORDER

For the reasons set out above, the Court grants in part and denies in part Defendant's motion to dismiss.  Specifically, the Court denies the motion to dismiss Plaintiff's claim for interference with prospective economic advantage and grants the motion to dismiss the remaining claims.  Plaintiff is granted leave to file a Second Amended Complaint that cures the pleading deficiencies set out in this Order.  Plaintiff is cautioned that if her Second Amended Complaint does not cure these deficiencies, the claims at issue will be dismissed with prejudice and without leave to amend.  The Second Amended Complaint shall be filed on or before **October 18, 2024**.  Because the case will proceed on at least one claim, the parties shall contact the Magistrate Judge's Chambers to schedule an Early Neutral Evaluation conference forthwith.

    **IT IS SO ORDERED**.

Dated:  October 11, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

7

22cv1798 DMS (DEB)